2014-1157
(Serial No. 12/757,643)

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

_____

IN RE ONTJES

_____

*Appeal from the United States Patent and Trademark Office,*
*Patent Trial and Appeal Board.*

_____

## BRIEF OF APPELLANTS

John M. Collins
HOVEY WILLIAMS LLP
10801 Mastin Blvd., Suite 1000
84 Corporate Woods
Overland Park, KS  66210
Tel:  (913) 647-9050
Fax: (913) 647-9057

ATTORNEYS FOR APPELLANTS

February 7, 2014

# CERTIFICATE OF INTEREST

Counsel for Appellant certifies the following:

1.  The full name of every party represented by me is:

    Jason Ontjes
    Joel Alderson

2.  The name of the real party in interest represented by me is

    Jason Ontjes
    Joel Alderson

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    None

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

    John M. Collins
    HOVEY WILLIAMS LLP


Date:  February 7, 2014                    /s/ John M. Collins
                                           John M. Collins
                                           HOVEY WILLIAMS LLP

                                           ATTORNEYS FOR APPELLANTS

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE SETTING OUT THE FACTS RELEVANT
    TO THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Overview, Background, and Claims . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.    The Prior Art Relied Upon By the Board . . . . . . . . . . . . . . . . . . . . . 5

        1.    Nunlist . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2.    Tullio . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        3.    Kalb . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        4.    Flanigen . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    D.    The Patent Office Rejections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A.    Standards of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

B.      A Conclusion that a Prior Art Reference Is "Capable of" a Function Requires that the Reference Be Made, Designed, or Configured to Perform the Function; Physical Capability Alone Does Not Render Obvious That Which Is Contraindicated by the Reference. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

C.      The Prior Art References Relied Upon By the Board Are Wildly Divergent and No Reasonable Skilled Artisan Would Ever Combine Them. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

D.      The Board Erred in Refusing to Give Patentable Weight to the Claim Limitations that the Cover Assembly Comprises a Decorative Body with Wall Structure Shaped and Configured to Present a Three-Dimensional Likeness of a Sports-Related Item. . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

ADDENDA

Decision on Appeal, August 30, 2013 . . . . . . . . . . . . . . . . . . . . A486-A497

Original Patent Application as Filed . . . . . . . . . . . . . . . . . . . . . . . . A15-A36

Appealed Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A448-A450

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) . . . . . . . . . . . . . . . . . . . 12

*Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966) . . . . . . . . . . . . . . . . . . . . . 13

*In re Clay*, 966 F.2d 656, 660 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Dimbiczak*, 175 F.3d 1994 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . 2, 18

*In re Elsner*, 381 F.3d 1125, 1127 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . 12, 13

*In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . 12

*In re Giannelli*, No. 2013-1167 (Fed. Cir. January 13, 2014) . . . . . . . . . 1, 13-15

*In re Klein*, 647 F.3d 1343 (Fed. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . 1, 16, 17

*In re Seid*, 161 F.2d 229 (CCPA 1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406-07 (2007) . . . . . . . . . . . . . . . 13

## Statutes & Rules

35 U.S.C. § 103(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

35 U.S.C. § 134 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

35 U.S.C. § 141 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

35 U.S.C. § 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## STATEMENT OF RELATED CASES

No other appeal in or from the same proceeding was previously before this or any other appellate court, whether under the same or a similar title, and there are no related cases pending before this Court or any other court.

## STATEMENT OF JURISDICTION

A.    The statutory basis for jurisdiction of the U.S. Patent and Trademark Office Patent Trial Appeal Board ("Board") is 35 U.S.C.§ 6 and § 134.

B.    The statutory basis for jurisdiction of this Court is 35 U.S.C. § 141.

C.    Appellant filed a timely Notice of Appeal on October 29, 2013, from the Board's final and appealable Decision on Appeal issued August 30, 2013.

## STATEMENT OF THE ISSUES

1.    Was it proper for the Board to sustain a rejection of the claims on the basis that the prior art was allegedly "capable of" holding propane, when that art never mentioned or referred to holding propane, and that notional capability was contraindicated by the art? *In re Giannelli*, No. 2013-1167 (Fed. Cir. January 13, 2014).

2.    Did the Board improperly combine a reference directed to a beverage can holder with a huge, multiple-thousand gallon glass-lined chemical reactor, when the references are not from the same field of endeavor of the inventors, and are not reasonably pertinent to the particular problem which confronted the inventors? *In re Klein*, 647 F.3d 1343 (Fed. Cir. 2011).

3.      Did the Board err in rejecting the claims on the basis that the "decorative body" limitations of the claims cannot be relied upon for patentability?   *In re Dimbiczak*, 175 F.3d 1994 (Fed. Cir. 1999).

## STATEMENT OF THE CASE SETTING OUT
## THE FACTS RELEVANT TO THE ISSUES

### A.      Procedural History

The application was filed on April 9, 2010, as Application No. 12/757,643, entitled DECORATIVE PROPANE TANK ASSEMBLY (hereinafter the "Application" or the "'643 application") (A15-A36).

The elected claims were rejected under Section 103 in an Office Action dated October 27, 2010 (A304-A351).

On November 22, 2010, Appellants filed an amendment amending certain claims and traversing the cited prior art (A352-A362).

On January 6, 2011, all claims were finally rejected under Section 103, and were also rejected under Section 112, second paragraph (A366-A405).

Appellants responded with an Amendment After Final on February 1, 2011, amending claims 1 and 15 and arguing the Section 103 rejection (A406-A415).

On February 24, 2011, in an Advisory Action, the after-final amendment was entered and such was deemed to overcome the rejection under Section 112, second paragraph.  However, Section 103 rejections were maintained (A416-A418).

On March 2, 2011, the Appellants file a Notice of Appeal from the Final Rejection (A420-A425).

On March 22, 2011, the Appellants filed their opening Brief (A426-A457).

On April 14, 2011, the Examiner filed an Answer (A458-A469).

On May 27, 2011, the Appellants filed their Reply Brief (A470-A480).

The Board issued a final Decision affirming the Examiner on August 30, 2013 (A486-A497).

On October 29, 2013, the Appellants timely filed a Notice of Appeal to this Court (A498-A500).

## B.    Overview, Background, and Claims

The invention claimed in the '643 application (A415-A436) is directed to a sports-related cover assembly for a propane tank (appealed claims 1 and 6-9; A448), and to a propane tank assembly (appealed claims 15 and 17-20; A449-A450). The inventor sought to provide covers and assemblies having wall structure placed around about a propane tank or otherwise forming a part of the tank, which presented a three-dimensional likeness of a sports-related item, with such wall structure having a concavo-convex wall segment. At the same time, the cover and tank assembly needed to be located below the propane tank valve so as to permit attachment thereof to a supply tubing or the like. (A--). The invention was particularly addressed to sports

3

enthusiasts who tailgate using portable grills or the like. Conventional propane thanks are normally white in color and the unsightliness thereof does not contribute to the festive atmosphere of a tailgate party. (A15). Fig. 6 illustrates the inventors' concept. (A30).



The appealed independent claims 1 and 15 are directed to a sports-related cover assembly for a propane tank, and a propane tank assembly, which present a three-dimensional likeness of a sports-related item and have concavo-convex wall structure. Thus, claim 1 is directed to a cover permanently attached to an existing propane tank, whereas claim 15 calls for a purpose-built decorative propane tank assembly. (A448-A450).

1.  A sports-related cover assembly for a propane tank, said tank including an upper wall and a valve extending upwardly from the upper wall, said cover assembly comprising a decorative body having

wall structure configured to be placed about a propane tank and presenting an upper and a lower margin, said wall structure including a substantially rigid outer wall shaped and configured to present a three-dimensional likeness of a sports-related item, said valve extending above said cover assembly upper margin, said decorative body formed of metal, permanently secured to said tank, presenting a concavo-convex wall segment, and having a portion thereof spaced at least one-half inch from the tank.

15. A propane tank assembly comprising metal wall structure designed to contain propane and presenting an upper metal wall, there being an outer metal wall below said upper wall, a valve extending upwardly from said upper wall and above said outer wall, said outer wall below said valve being permanently secured to said upper wall, substantially rigid and shaped and configured to present a three-dimensional likeness of a sports-related item, said wall structure having a concavo-convex wall segment.

## C.    The Prior Art Relied Upon By the Board

In its affirmance, the Board relied upon the references to Nunlist, Tullio, and Kalb in rejecting all claims (A488-A496),. and also relied upon Flanigen, Tullio, and Kalb in a further rejection of claims 15 and 21.  (A496).  These references are individually described below.

*1.    Nunlist* (A509-A516).

Nunlist describes very large, industrial-sized ,jacketed, and glass-lined reaction vessels which are used to process corrosive or abrasive chemicals, pharmaceuticals, foodstuffs, and the like, under several atmospheres of pressure during the course of exothermic or endothermic chemical reactions (A513; col. 2, ll. 36-49; Fig. 1).  The

5

reaction vessels comprise a steel inner wall 12, which is glass-coated (A513; col. 2, ll. 44-49; A510; Fig. 1), and is provided with an upper manhole 13 and one or more top nozzles 14 permitting loading of the vessel and insertion of mixers, baffles, or temperature probes (A513; col. 2, ll. 50-55; A510; Fig. 1), as well as a bottom material discharge nozzle 16 (A513; col. 2, ll. 55-57; A510; Fig. 1). Valve means may be used to close the nozzles 14, 16 (A513; col. 2, ll. 57-58; A510; Fig. 1). The reaction vessels also include a smooth outermost jacket 18 permitting introduction of heat exchange media (A513; col. 2, ll. 59-62; A510; Figs. 1-2).

The Nunlist reaction vessels are huge, on the order of thousands of gallons (A513; col. 2, ll. 41-42), with the size of the opening 24 defining the nozzles 14, 16 being on the order of 12 inches in diameter (A512; col. 3, ll. 24-39). The presence of the manhole 13, being only a small part of the total surface area of the upper tank wall, also confirms that the reaction vessels are extremely large (A513; col. 2, ll. 50-51; A510; Fig. 1). The words "propane" and "propane tank" do not appear in the description of the Nunlist reference.

The jackets 18 of Nunlist are smooth, rounded, and do not present concavo-convex decorative structure configured to present a three-dimensional likeness of a sports-related item (A510; Fig. 1).

Nunlist's Fig. 1 is set forth below.

6



FIG. 1

2.    *Tullio* (A517-A521).

Tullio describes a miniature football helmet having a removable, insulated gel beverage holder 18 (A520; ¶ 0004; A519; Fig. 3).   The beverage holder 18 is designed to removably receive a beverage can 22 (A520; ¶ 0007; A519; Fig. 3).  The football helmet is provided with a simulated face mask 20 which is used as a handle to permit the entire helmet structure, with the holder 18 and can 22 in place, to be lifted so as to permit drinking from the can 22 (A520; ¶ 0001; A518; Fig. 1).  Of necessity, the holder 18 and can 22 *must* be removable from the miniature helmet, in order to permit successive cans 22 to be inserted and the contents thereof consumed.

The following Figure illustrates Tullio:



*3.* *Kalb* (A507-A508).

This design patent depicts an upright generic tank with what appears to be a flexible drape cover having a two-dimensional image of a football imprinted thereon (A507-A508; Figs. 1-2). The tank is not equipped with a valve and there is no disclosure that the tank is pressurized or that it is designed to contain propane. There is no concavo-convex decorative structure configured to present a three-dimensional likeness of a sports-related item (A507-A508).

Representative Fig. 1 of Kalb depicts his invention:



8

    *4.    Flanigen* (A501-A506).

Flanigen describes an asbestos-free hardened monolithic filler mass and illustrates a gas storage vessel in the form of a metal shell 10 filled with the mass. (A504; col. 4, ll. 17-27). The shell 10 is equipped with an upper valve 13, fuse plugs 14, and a foot ring 15. In use, a slurry is introduced into the shell and is then autoclaved within the shell to a temperature of 360-450°F for a period of 20-60 hours. (A505; col. 5, l. 57- col. 6, l. 5).

The single figure from Flanigen is set forth here:



## D.    The Patent Office Rejections

In the first Action rejection (A304-A351), the claims were rejected over Culp (A522-A532) in view of Tullio (A517-A520), and Kalb (A507-A508). The Culp reference was directed to a cover assembly for a propane tank (A529; col. 3, ll. 11-33), whereas Tullio and Kalb have been described above. In response, the Appellants

amended independent claim 1 to recite that "said decorative body formed of metal, secured to said tank, presenting a concavo-convex outer surface, and having a portion thereof spaced at least one-half inch from the tank" (A353), while claim 15 was amended to recite that the wall structure was metal, permanently secured to the upper wall of the structure, and with the wall having a concavo-convex outer surface (A355). The Appellants argued that Culp was directed only to a method of covering a used propane tank to conceal surface imperfections; that Tullio was not concerned with a propane tank of any type; and that Kalb depicted a tank of unknown type having a drape over the tank. (A358-A359). Appellants also argued that the hypothetical combination did not meet the terms of the claims and that the references were non-combinable. (A358-A359).

In the next Final Action (A365-A405), the only reference even tangentially related to propane tanks (Culp) was dropped, and the claims were rejected solely on the basis of Nunlist (A509-A516) in view of Tullio (A517-A521) and Kalb (A507-A508). Claims 15 and 21 were further rejected over Flanigen (A501-A506) in view of Tullio (A517-A521) and Kalb (A507-A508).

On appeal, the Board affirmed on several bases. The Board first held that the recitations in claim 1 respecting the propane tank were met by Nunlist, which was purportedly "capable of" holding propane, and that there need be no teaching or

suggestion in the art that Nunlist's tank be appropriate for propane storage (A490-A493), claim features relating to ornamentation cannot be relied upon for patentability (A494–A495); and that the references were analogous (A496).

## SUMMARY OF THE ARGUMENT

The Board's Decision is riven with fundamental errors, each of which mandates reversal. Perhaps the most telling indicator of error is that the Board affirmed obviousness rejections based upon multiple prior art references, none of which ever mentions a signal feature of the claimed invention, namely propane tanks, and still less any teachings pertaining to decorative structure for propane tanks in the form of wall structure presenting a three-dimensional likeness of a sport-related item.

The Board first adopted the Examiner's reasoning that meeting the claim limitations respecting a "propane tank" required only the showing of some sort of sealed vessel coupled with the conclusory assertion that the vessel was "capable of" holding propane. According to the Board, this is so even when none of the references teach or suggest this utility, and in fact all contraindicate the utility.

Next, the Board concluded that a reference directed to a beverage can holder is properly combinable with a reference disclosing a huge, glass-lined chemical reactor. Such divergent art cannot be deemed analogous under any reasonable interpretation.

11

The Board further refused to grant any patentable weight to the "decorative" limitations of the claims, finding that such cannot be relied upon for patentability. The only case law support for this proposition was a 1947 CCPA case, while ignoring controlling precedent, such as the well-known Dimbiczak pumpkin-decorated trash bag case.

In considering this appeal, the Court is urged to initially step back from the minutia of the references and the legal arguments, and consider the totality of the art in a holistic fashion. In this context, it is manifest that no real-world skilled artisan would even consult, much less combine, the utterly disparate references as the Board has done. What skilled artisan would be led to combine a thousand-gallon chemical reactor with a holder for 12-ounce beverage cans?

## ARGUMENT

### A.     Standards of Review

This Court reviews the Board's legal conclusions *de novo*. *In re Elsner*, 381 F.3d 1125, 1127 (Fed. Cir. 2004), and the Board's factual findings underlying these determinations for substantial evidence, *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). A finding is supported by substantial evidence if a reasonable mind might accept the evidence to support the finding. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Obviousness is a question of law, based upon underlying factual

findings.  *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *Elsner*, 381 F.3d W

1127.  A claim is invalid for obviousness if, to one of ordinary skill in the pertinent

art, "the differences between the subject matter sought to be patented as a whole

would have been obvious at the time the invention was made …" 35 U.S.C. § 103(a)

(2006); *see also*, *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406-07 (2007).

**B.    A Conclusion that a Prior Art Reference Is "Capable of" a Function
Requires that the Reference Be Made, Designed, or Configured to
Perform the Function; Physical Capability Alone Does Not Render
Obvious That Which Is Contraindicated by the Reference.**

A bone of contention throughout the prosecution of the patent application is

the notion that the Nunlist chemical reactor was "capable of" holding propane, and

that this determination need not be supported by any explicit disclosure or suggestion

in the reference.  In commenting on this issue, the Board stated:

> Regarding the Examiner's finding that Nunlist's tank is
> "capable of storing propane," Appellants contend that
> "merely because the tank may be 'capable of' storing
> propane is not enough.  *There must be some teaching or
> suggestion in the art for propane storage.*"… However,
> while Nunlist does not explicitly describe use of the
> pressure vessel for storing propane, Appellants do not cite
> any authority supporting the contention that Nunlist must
> provide an explicit teaching or suggestion of this use.

(A492; emphasis in original).

However, this issue has recently been resolved by the Federal Circuit.  *In re

Giannelli*, No. 2013-1167 (Fed. Cir. Jan. 13, 2014) involved a patentability appeal

wherein the applicant claimed an exercise machine where the user pulled on handles in a rowing motion.  The Patent Office principally relied upon a chest press exerciser which was operated by the user pushing on a handle bar to overcome a selected resistance.  The Board concluded that the "pulling force" of the claims was a new intended use for the prior art chest press exerciser, and that the prior art device was "capable of" being used in a pulling fashion.

In reversing, this Court first characterized the relevant question as whether the prior art apparatus was "made to, designed to, or configured to" allow the user to perform the pulling motion, holding that the "*mere capability*" of pulling the handles is not the proper inquiry; rather, the Board should have determined "whether it would have been obvious to modify the prior art apparatus to arrive at the claimed rowing machine."  (p. 8).  The Court further held that "[p]hysical capability along does not render obvious that which is contraindicated."  (p. 8).

The present case parallels *Giannelli*.  Here, the Board found it sufficient that Nunlist was "capable of" holding propane, when there is not a word in the reference regarding such a utility, and indeed this is contraindicated because Nunlist discloses a glass-lined chemical reactor; manifestly, this reactor is not "made to, designed to, or configured to" hold propane, which would likely explode during a chemical reaction.  Tullio's beverage cans surely are not meant to hold propane, because

14

ingestion thereof would be fatal. Kalb's generic tank design is unknowable as to function. If propane were placed in Flanigen's device, the high temperature, long-time treatment required by Flanigen would surely rupture the device.

The fundamental problem with the Board's "capable of" theory is that it is entirely abstract and has no discernible limits. For example, Nunlist is also, in keeping with the Board's theory, "capable of" serving as a storm shelter. Nunlist's manhole in the reactor cover would permit users to enter and leave the reactor/storm shelter at will. Nunlist would also be "capable of" serving as a bomb casing. The pressure conditions within the reactor would augment the explosive charge therefrom. Needless to say, such "capable of" utilities, entirely divorced from the actual teachings of Nunlist, are virtually limitless. The Board's "capable of" rationale would thus render almost all aspects of all references of unlimited scope and applicability, contrary to long-established principles of patent law.

Clearly, unless an apparatus in a reference is taught or suggested to have a given utility, it is irrelevant that the apparatus is "capable of" some other notional utilities. This is the underlying rationale of the *Giannelli* case, namely that any finding of "capable of" must rest upon teachings within the four corners of the reference which support the finding.

Here, it is apparent that the Board's "capable of" rejection is clearly erroneous, for none of the reference in any way mention or suggest propane storage, and indeed all of the references contraindicate this utility.

### C. The Prior Art References Relied Upon By the Board Are Wildly Divergent and No Reasonable Skilled Artisan Would Ever Combine Them.

The non-analogous nature of the four references relied upon by the Board is blindingly apparent from a casual review. First comes Nunlist, which describes a huge, thousand-gallon, glass-lined chemical reactor. This is followed by Tullio, which describes a beverage holder designed to removably hold and maintain the cold temperature of beverage cans. Kalb's design patent illustrates an upright generic tank with (apparently) a flexible drape cover, whereas Flanigen describes a metal shell vessel filled with a monolithic filler mass and cured by heating at 360-450°F for a period of 20-60 hours.

The law pertaining to non-analogous references is well settled. As stated in *In re Klein*, 647 F.3d 1343, 1347-8 (Fed. Cir. 2011):

> A reference qualifies as prior art for an obviousness determination under § 103 only when it is analogous to the claimed invention … Two separate tests define the scope of analogous prior art: (1) whether the art is from the same field of endeavor of the problem addressed, and (2) if the reference is not within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved.

In *Klein*, the invention was directed to a mixing device for use in the preparation of sugar/water avian nectars, including shiftable dividers for varying the proportions of ingredients, thus allowing the device to be used in the preparation of various types of nectars. The prior art relied upon by the Board disclosed devices for holding and maintaining apart different solid objects, and a blood plasma bottle having separate compartments divided by a fixed wall. This Court reversed, holding that the Board's finding of analogous art was not supported by substantial evidence. 647 F.3d at 1352. *See also*, *In re Clay*, 966 F.2d 656, 660 (Fed. Cir. 1992), where prior art dealing with plugging of underground formation anomalies was not analogous to claims directed to solving the problem of dead volumes of tanks.

It is noteworthy that the art references considered in *Klein* and *Clay* were at least marginally related to the inventions in question. In this case, though, the references are so remote that the attempt to combine them verges on the farcical. This is perhaps best epitomized by the Board's attempted justification, namely that "Nunlist relates to a pressurized vessel for holding fluids, Tullio relates to pressurized containers for fluids, and Kalb does not appear to be limited to a particular type of tank." (A496). Yes, but Nunlist is a huge chemical reactor, Tullio deals with soda or beer cans, and Kalb is nothing but a generic tank. It is submitted that *Klein*, *Clay*,

and their progeny establish that there is no substantial evidence supporting the Board's conclusion of analogous prior art.

> **D.     The Board Erred in Refusing to Give Patentable Weight to the Claim Limitations that the Cover Assembly Comprises a Decorative Body with Wall Structure Shaped and Configured to Present a Three-Dimensional Likeness of a Sports-Related Item.**

The Board specifically held that the limitation in claim 1 about a "decorative body" having wall structure presenting a three-dimensional likeness of a sports-related item could not be relied upon in a utility patent application claim, citing a 67-year old case, *In re Seid*, 161 F.2d 229 (CCPA 1947). (A493). The very fact that the Board was forced to rely upon such relatively ancient precedent is telling. More pertinent and controlling is the case of *In re Dimbiczak*, 175 F.3d 1994 (Fed. Cir. 1999). In *Dimbiczak*, the claim was directed to a plastic trash or leaf bag having an orange outer color with facial indicia on the bag which, when filled, takes the form and general appearance of a pumpkin with a face thereon. Clearly, the yellow coloring and the imprinted pumpkin face on an otherwise conventional trash bag are "decorative" and serve no mechanical function whatsoever, i.e., a conventional bag and *Dimbiczak*'s bag are functionally identical in that both hold leaves or trash. The only possible novelty in Dimbiczak's claims was the "decorative" limitations, which allowed the users "to express their whimsical or festive nature." 175 F.3d at 994. Yet

18

neither the Board nor the Federal Circuit raised any issue about the ability of "decorative" limitations to distinguish the prior art.

It is hornbook law that every claim limitation must be considered and be given appropriate weight. The fact that a limitation may refer to decorative features does not alter this fundamental proposition.

## CONCLUSION

For the reasons stated, it is respectfully submitted that the Patent Office's Decision is erroneous and should be reversed.

Date: February 7, 2014     Respectfully submitted,

By   /s/John Michael Collins
  John M. Collins
  HOVEY WILLIAMS LLP
  10801 Mastin Blvd., Suite 1000
  84 Corporate Woods
  Overland Park, KS  66210
  Tel:  (913) 647-9050
  Fax: (913) 647-9057

  ATTORNEYS FOR APPELLANTS

CASE PARTICIPANTS ONLY

# ADDENDA

# TABLE OF CONTENTS

Decision on Appeal, August 30, 2013 . . . . . . . . . . . . . . . . . . . . . . . A486-A497

Original Patent Application as Filed . . . . . . . . . . . . . . . . . . . . . . . . . A15-A36

Appealed Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A448-A450

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/757,643 | 04/09/2010 | Jason Ontjes | 41315-CIP1 | 3134 |

| | |
|---|---|
| 23589        7590        08/30/2013 | EXAMINER |
| Hovey Williams LLP | EDWARDS, BRETT J |
| 10801 Mastin Blvd., Suite 1000 | |
| Overland Park, KS 66210 | ART UNIT | PAPER NUMBER |
| | 3781 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/30/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

**A486**

UNITED STATES PATENT AND TRADEMARK OFFICE

————————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————————

*Ex parte* JASON ONTJES and JOEL ALDERSON

————————————

Appeal 2011-010529
Application 12/757,643
Technology Center 3700

————————————

Before EDWARD A. BROWN, MICHAEL L. HOELTER, and
LYNNE H. BROWNE, *Administrative Patent Judges*.

BROWN, *Administrative Patent Judge*.

DECISION ON APPEAL

Appeal 2011-010529
Application 12/757,643

## STATEMENT OF THE CASE

This is an appeal under 35 U.S.C. § 134(a) from the Examiner's rejections of claims 1, 6-9, 15, and 17-21. App. Br. 2. Claims 3-5 and 10-13 have been withdrawn from consideration as being drawn to non-elected subject matter, and claims 2, 14, and 16 have been canceled. *Id.* at 6. We have jurisdiction over this appeal under 35 U.S.C. § 6(b).

We AFFIRM.

## CLAIMED SUBJECT MATTER

Claims 1 and 15 are independent. Claim 1 reads:

> 1. A sports-related cover assembly for a propane tank, said tank including an upper wall and a valve extending upwardly from the upper wall, said cover assembly comprising a decorative body having wall structure configured to be placed about a propane tank and presenting an upper and a lower margin, said wall structure including a substantially rigid outer wall shaped and configured to present a three-dimensional likeness of a sports-related item, said valve extending above said cover assembly upper margin, said decorative body formed of metal, permanently secured to said tank, presenting a concavo-convex wall segment, and having a portion thereof spaced at least one-half inch from the tank.

## REJECTIONS

Claims 1, 6-9, 15, and 17-20[1] are rejected under 35 U.S.C. § 103(a) as unpatentable over Nunlist (US 4,473,171; issued Sep. 25, 1984), Tullio (US

---

[1] Appellants incorrectly indicate that claim 21 is also included in this ground of rejection. App. Br. 11.

Appeal 2011-010529
Application 12/757,643

2009/0057325 A1; pub. Mar. 5, 2009), and Kalb (US D577,791 S; issued
Sep. 30, 2008).

Claims 15 and 21 are rejected under 35 U.S.C. § 103(a) as
unpatentable over Flanigen (US 4,765,458; issued Aug. 23, 1988), Tullio,
and Kalb.

## ANALYSIS
*Rejection of claims 1, 6-9, 15, and 17-20 – Nunlist, Tullio, and Kalb*

Appellants indicate that "[c]laims 1 and 6-9 are argued as a group, and
similarly claims 15 and 17-21 are argued as a group." App. Br. 10. We
note, however, that Appellants do not present separate arguments for both
groups of claims, but argue all of the claims 1, 6-9, 15, and 17-20 as a single
group. *Id.* at 15-22. We select claim 1 as representative, and claims 6-9, 15,
and 17-20 stand or fall with claim 1. *See* 37 C.F.R. § 41.37(c)(1)(vii).

Claim 1 is directed to a "sports-related cover assembly for a propane
tank," and recites "said decorative body . . . [is] permanently secured to said
tank." The Examiner construed this language, as follows:

> It is noted that while the preamble of claim 1
> recites 'A sports-related cover assembly for a
> propane tank,' indicating an intended use of the
> cover, the independent claim 1 as well as the
> claims dependent on claim 1 were examined as
> requiring the combination of the tank and cover
> due to the limitation of 'said decorative body
> formed of metal, **permanently** secured to said
> tank' (emphasis added) in lines 6 and 7 of claim 1.
> However, the recitation of 'propane' is still an
> intended use of the tank and as such the tank
> simply has to be capable of containing propane.

Ans. 9.

Appeal 2011-010529
Application 12/757,643

The Examiner found that Nunlist discloses a cover assembly for a
pressurized tank "capable of storing propane," wherein the cover assembly
comprises a decorative body (jacket 18) having wall structure configured to
be placed about a propane tank (steel wall 12), and which is permanently
secured to the tank. Ans. 4 (citing Nunlist, col. 2, l. 35 – col. 3, l. 39; figs. 1-
4). The Examiner also found that Nunlist does not expressly disclose that
the outer wall of the wall structure is shaped and configured to present a
three-dimensional likeness of a sports-related item, or that the decorative
body has a portion spaced at least one-half inch from the tank. *Id.*

The Examiner relied on Tullio for disclosure of a decorative cover for
a pressurized container, comprising a decorative body (replica helmet body
12) having wall structure configured to be placed around a pressurized
container (can/bottle 22), and which includes an outer wall shaped and
configured to present a three-dimensional likeness of a sports-related item.
Ans. 5 (citing Tullio, paras. [0001]-[0006]; figs. 1-3).[2] The Examiner relied
on Kalb for disclosure of a tank cover with the ornamental design of a sports
related item. *Id.* The Examiner concluded that it would have been obvious
to one of ordinary skill in the art to modify Nunlist's cover to have the outer
wall shaped and configured to present a three-dimensional likeness of a
sports-related item, as taught by Tullio, and motivated by the ability for a
user to show enthusiasm for sports while covering the tank, as taught by
Kalb. *Id.*

---

[2] We note that Tullio discloses that the replica football helmet "provid[es]
insulating properties for beverage consumption to individuals interested in
representing their team loyalty while consuming said beverage." *See* Tullio,
para. [0001].

Appeal 2011-010529
Application 12/757,643

Appellants contend that none of Nunlist, Tullio, and Kalb is related to propane tanks. App. Br. 15-17. Regarding the Examiner's claim construction discussed *supra*, Appellants state "[i]f as asserted the claims properly require the combination of a propane tank and cover, the 'propane' limitation cannot be ignored." Reply Br. 6. We do not agree with Appellants that the Examiner has ignored the "propane" limitation. Claim 1 does not recite that the propane tank contains propane. Claim 1 recites "said [propane] tank including an upper wall and a valve extending upwardly from the upper wall." The Examiner found that Nunlist's pressure vessel includes these claimed structural features of the propane tank. Appellants have not apprised us of any error in these findings.

The Patent and Trademark Office (PTO) determines the scope of claims "not solely on the basis of the claim language, but upon giving claims their broadest reasonable construction 'in light of the specification as it would be interpreted by one of ordinary skill in the art.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316-17 (Fed. Cir. 2005) (citation omitted). Appellants do not direct us to a definition of "propane tank" in the Specification. We note, however, that the Specification states the following regarding propane tanks that can be used in the invention:

> Furthermore, while the invention has been illustrated in the context of standard household propane tanks, the principles of the invention can be equally applied to larger or differently-configured propane tanks. Thus, *the term 'propane tank' as used herein should be understood to embrace all shapes and sizes of propane tanks*.

*See* Spec. 7, ll. 1-4 (emphasis added). According to this disclosure, the term "propane tank" should be construed as effectively encompassing *any*

Appeal 2011-010529
Application 12/757,643

propane tank configuration. As such, the Specification does not appear to limit the structure of the "propane tank" in the claim preamble so as to require any additional structural features not expressly recited in the claim, or not found in Nunlist's pressure vessel.

Regarding the Examiner's finding that Nunlist's tank is "capable of storing propane," Appellants contend that "merely because the tank may be 'capable of' storing propane is not enough. *There must be some teaching or suggestion in the art to use the tank for propane storage*." App. Br. 20 (emphasis added). However, while Nunlist does not explicitly describe use of the pressure vessel for storing propane, Appellants do not cite any authority supporting the contention that Nunlist must provide an explicit teaching or suggestion of this use. In fact, the Supreme Court has rejected the rigid requirement of a teaching, suggestion or motivation to combine known elements in order to show obviousness. *KSR International Co. v. Teleflex, Inc.*, 550 U.S. 398, 415 (2007). Furthermore, "it is well settled that the recitation of a new intended use for an old product does not make a claim to that old product patentable." *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997) (citations omitted).

Where the PTO "has reason to believe that a functional limitation asserted to be critical for establishing novelty in the claimed subject matter may, in fact, be an inherent characteristic of the prior art," the PTO can require Appellants "to prove that the subject matter shown to be in the prior art does not possess the characteristic relied on." *In re Best*, 562 F.2d 1252, 1254-55 (CCPA 1977) (citation omitted). We agree with the Examiner that Appellants have not provided any persuasive argument or evidence to show why Nunlist's pressure vessel is *not* capable of storing propane. Ans. 9.

Appeal 2011-010529
Application 12/757,643

Appellants also contend that "merely because a given prior art structure may be in the abstract 'capable of' performing a certain use does not *ipso facto* mean that it would be obvious to employ that prior art structure for the use in question." Reply Br. 8. However, Appellants have the same burden of proof whether the rejection is based on inherency under 35 U.S.C. § 102 or on prima facie obviousness under 35 U.S.C. § 103. *Id.* at 1255. Also, the "fairness [of the burden-shifting] is evidenced by the PTO's inability to manufacture products or to obtain and compare prior art products." *Id.*

Appellants also contend that Nunlist's jacket 18 is not a "decorative body," as claimed. App. Br. 16. Appellants provide a definition of "decorative" as "serving to decorate; *especially:* purely ornamental." *Id.* Appellants state that "[t]his definition is in accord with the present application and claims where *the claimed wall structure is ornamental in nature and intent*." *Id.* (emphasis added). Thus, Appellants acknowledge that, in accordance with their construction of "decorative," the claimed "wall structure" of the "decorative body" is "purely ornamental." We construe "purely ornamental" as only providing ornamentation, and no mechanical function.

However, claim features that relate to "ornamentation only and have no mechanical function whatsoever" cannot be relied upon for patentability of a claim in a utility patent application. *In re Seid*, 161 F.2d 229, 231 (CCPA 1947). Accordingly, the claimed ornamental features of the wall structure cannot be relied upon to distinguish it from Nunlist's jacket. We note that claim 1 recites "said wall structure including a substantially rigid outer wall *shaped and configured to present a three-dimensional likeness of a sports-related item*." Emphasis added. Accordingly, the claimed shape

and configuration of the outer wall "to present a three-dimensional likeness of a sports-related item" cannot be relied upon to distinguish the wall structure from Nunlist's jacket.

Appellants also contend that Nunlist's jacket 18 could not be configured to include concavo-convex wall structure presenting a three-dimensional likeness of a sports-related item, and that jacket 18 must be at an essentially uniform distance from wall 12. App. Br. 16. We note, however, that Appellants' Specification states:

> As used herein, with reference to the cover assembly bodies of the invention 'three-dimensional' means that a given cover assembly body presents a contoured or *concavo-convex outer surface, preferably with portions of the outer surface spaced a significant distance (preferably at least about one-half inch, and most preferably at least about one inch) from the proximal propane tank wall*.

*See* Spec. p. 2, l. 31 – p. 3, l. 2 (emphasis added). In light of this definition of "three-dimensional," the claim recitation "presenting a concavo-convex wall segment, and having a portion thereof spaced at least one-half inch from the tank," also appears to be directed to ornamental features of the wall structure that provide the "three-dimensional likeness." As such, these ornamental features also cannot be relied upon to distinguish the claimed decorative body from Nunlist's jacket. Thus, Appellants have not apprised us of any claim limitation that patentably distinguishes claim 1 from Nunlist. In other words, we believe that Nunlist renders the claimed invention unpatentable.

Even assuming, however, that the above-described ornamental features of the wall structure of the claimed decorative body should be given

Appeal 2011-010529
Application 12/757,643

patentable weight, we agree with the Examiner that it would have been obvious to modify Nunlist's vessel to result in the claimed cover assembly. In this regard, Appellants' contentions that Nunlist, Tullio, and Kalb are not related to propane tanks are not persuasive. Appellants have not provided any persuasive argument or evidence that Nunlist's vessel is not capable of storing propane, and the Examiner did not rely on Tullio and Kalb for teachings directed to storing propane.

Regarding the claim recitation "presenting a concavo-convex wall segment, and having a portion thereof spaced at least one-half inch from the tank," we agree with the Examiner that Appellants have not provided any persuasive argument or evidence that supports the contention that Nunlist's jacket 18 could not be configured to include concavo-convex wall structure presenting a three-dimensional likeness of a sports-related item, or that jacket 18 must be at an essentially uniform distance from wall 12. Accordingly, this contention is not persuasive.

Appellants also contend that the rejection is improper because the prior art relied on by the Examiner is non-analogous. App. Br. 17. Appellants also contend that Tullio is "entirely non-analogous to Nunlist and Kalb." *Id.* at 22. The two separate tests for determining whether a reference is analogous prior art for purposes of a rejection under 35 U.S.C. § 103 are: (1) whether the reference is from the same field of endeavor, regardless of the problem addressed; and (2) *if* the reference is not within the inventor's field of endeavor, whether the reference is reasonably pertinent to the particular problem with which the inventor is involved. *In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004). Here, Appellants do not appear to indicate what particular problem the invention is directed to. We note,

Appeal 2011-010529
Application 12/757,643

however, that the Specification discloses that "[i]t would therefore be a boon
to tailgaters if unattractive and innocuous propane tanks could be decorated
in a manner consistent with a tailgate party scheme, and particularly to give
the appearance or likeness of a sports-related item consistent with the
tailgate party theme." *See* Spec. p. 2, ll. 6-8.

Nunlist relates to a pressurized vessel for containing fluids, Tullio
relates to pressurized containers for fluids, and Kalb does not appear to be
limited to a particular type of tank. In addition, Tullio and Kalb are both
directed to providing "the appearance or likeness of a sports-related item" to
an article that contains fluid. Appellants have not provided any persuasive
argument why the applied references are not reasonably related to the
problem with which the claimed invention appears to be involved. Thus,
Appellants' non-analogous art contention is not persuasive.

Finally, we find that the Examiner has articulated an adequate reason
with rational underpinning to combine the teachings of Nunlist, Tullio, and
Kalb to result in the claimed invention. Ans. 5. Appellants have not
apprised us of any error in the Examiner's reasoning.

Thus, we sustain the rejection of claim 1, and claims 6-9, 15, and 17-
20, which fall with claim 1.

*Rejection of claims 15 and 21 – Flanigen, Tullio, and Kalb*

Appellants do not provide any additional argument in regard to this
rejection. Accordingly, we also sustain the rejection of claims 15 and 21 as
obvious over Flanigen, Tullio, and Kalb.

Appeal 2011-010529
Application 12/757,643

## DECISION

The Examiner's rejections of claims 1, 6-9, 15, and 17-21 are AFFIRMED.

No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a). *See* 37 C.F.R. § 1.136(a)(1)(iv).

<u>AFFIRMED</u>

hh

# DECORATIVE PROPANE TANK ASSEMBLY

## CROSS-REFERENCE TO RELATED APPLICATION

5    This is a continuation-in-part of identically titled application S/N 12/714,672, filed
March 1, 2010.

## BACKGROUND OF THE INVENTION

Field of the Invention

The present invention is broadly concerned with decorative cover assemblies designed
10   to cover a propane tank (e.g., a standard 20 lb. household tank) and to present the three-
dimensional appearance or likeness of a sports-related item, such as athletic headgear or athletic
balls. More specifically, the invention is directed to such cover assemblies which may be
separate from a propane tank or integrated therewith, and which may be formed of any suitable
material, such as metal or synthetic resin. Exemplary cover assemblies in accordance with the
15   invention may be solid, hollow, or inflatable.

Description of the Prior Art

A tailgate party is a social event held on or around the open tailgates of vehicles.
Tailgating traditionally involves consuming beverages and grilling food. Tailgate parties often
20   occur in the parking lots of stadiums and arenas before, during, and after sporting events. For
example, tailgate parties have become particularly popular in the U.S. as social gatherings that
take place in stadium parking lots before football games. As an adjunct to such parties, tailgaters
have flags, pennants, outerwear such as shirts, jackets, and caps, and all manner of other items,
bearing the logo and/or name of their favorite team. Such team identification is deemed essential
25   by tailgate participants.

Dedicated tailgaters sometimes have elaborate portable equipment for grilling of foods.
Thus, many tailgaters have portable propane grills making use of one or more standard household
propane tanks. These tanks are generally white in color and are positioned beneath the grill. As
such, the tanks are unsightly and do not contribute to the festive atmosphere of a tailgate party.
30   Various covers have been provided in the past for coolers and barbecue grills.
Additionally, flexible cloth-type covers for propane tanks have been proposed, which do not
provide a definite, three-dimensional shape. See U.S. Patents Nos. 4,705,085, 5,622,261,
6,237,787, 6,386,384, 6,401,951, and 6,866,159; U.S. Design Patents Nos. D289,598, D351,971,

2

D442,818, D486,551, D516,365, D572,478, D577,096, D577,097, D577,791, and D599,625;
U.S. Published Patent Applications Nos. 2002/0175193, 2005/0205180, and 2007/0068957;
Foreign Patent Publications Nos. AU2009100673 and GB2441056; and non-patent literature
items entitled Baseball Jersey Grill Cover, BBQ Covers-Mustard Bottle, and Propane Tanks
5      Cover.

It would therefore be a boon to tailgaters if unattractive and innocuous propane tanks
could be decorated in a manner consistent with a tailgate party scheme, and particularly to give
the appearance or likeness of a sports-related item consistent with the tailgate party theme.

10                          SUMMARY OF THE INVENTION

The present invention addresses the problem outlined above, and provides decorated
propane tanks with sports-related themes. In some embodiments, cover assemblies for propane
tanks are provided, each comprising a decorative body having wall structure designed to surround
a propane tank with a substantially rigid outer wall configured to present a three-dimensional
15     likeness or appearance of a sports-related item. The wall structure may also include an inner wall
designed to mate with a propane tank (i.e., the inner wall is configured to rest upon or otherwise
be supported by a propane tank wall). The cover assembly may be separable from a propane
tank, can be integrated with the tank, or the tank may be formed with the decorative surface
aspects, such that there is no separate tank. The outer surface of the cover assembly is typically
20     designed to give the three-dimensional likeness or appearance of things such as athletic headgear,
athletic footwear, athletic balls, or other athletic equipment.

As noted, the cover assemblies have substantially rigid outer walls defining the
corresponding sports-related item, and preferably the entirety of the decorative bodies are of
substantially rigid construction. The bodies have upper margins below the valve associated with
25     the propane tank. In this fashion, the valve may be connected to a barbecue grill, for example,
without interference by the cover assemblies. Thus, the propane tank can be used in the usual
fashion with the cover assemblies of the invention in place. Moreover, the cover assemblies of
the invention are not inflatable, as in the case of certain prior art covers; it is believed that such
inflatable designs would not provide the degree of verisimilitude that can be achieved with the
30     substantially rigid designs of the invention.

As used herein, with reference to the cover assembly bodies of the invention "three-
dimensional" means that a given cover assembly body presents a contoured or concavo-convex
outer surface, preferably with portions of the outer surface spaced a significant distance

**A16**

3

(preferably at least about one-half inch, and most preferably at least about one inch) from the proximal propane tank wall. Such three-dimensional cover assemblies thus are distinctly different from conventional two-dimensional images printed on a simple flexible tank cover or the like.

5        Hence, in the case of a cover assembly body having a simulated athletic headgear outer surface, the headgear is broadly selected from the group consisting of athletic helmets, caps, and hats, e.g., helmets for racing, football, lacrosse, baseball batting, rodeo, fencing, skiing and other winter sports, bicycling, hockey, and boxing. In the case of athletic footwear, the cover assembly body may present the three-dimensional appearance of footwear for soccer, football, hockey,

10      basketball, track, skiing, boxing, golf, ballet, and bicycling. A wide variety of athletic cover assembly bodies may give the three-dimensional appearance of a simulated athletic ball, for example balls selected from the group consisting of baseballs, basketballs, cricket balls, tennis balls, footballs, rugby balls, lacrosse balls, baoding balls, billiard balls, table tennis balls, bowling balls, handballs, soccer balls, wiffle balls, polo balls, golf balls, racquet balls, beach balls, and

15      volley balls. Other cover assembly bodies giving the three-dimensional appearance of simulated sports-related items may include covers giving the three-dimensional appearance of athletic apparel selected from the group consisting of jerseys, shirts, jackets, shorts, pants, stockings, pads, and gloves, hockey pucks, curling stones, racquets, mallets, baseball bats, hockey sticks, and basketball nets. In short, the scope of the present invention is limited only by the

20      imagination of the fabricator.

It will also be appreciated that, in most instances, the outer surface of a given cover assembly would also include the name and/or logo of a specific team or athlete. In this way, the user can both decorate an otherwise bland-looking propane tank, while also proclaiming loyalty to the user's favorite team or athlete.

25

### BRIEF DESCRIPTION OF THE DRAWINGS

Figure 1 is a front perspective view of the combination of a standard household propane tank with a detachable, dual section cover assembly in accordance with the invention and presenting the likeness of an automobile racing helmet, wherein the cover assembly is mounted

30      on the tank;

Fig. 2 is a rear perspective view similar to that of Fig. 1, but illustrating the surface structure of the cover assembly opposite that of Fig. 1;

Fig. 3 is a plan view of the combination depicted in Fig. 1;

4

Fig. 4 is a partial sectional view of the combination depicted in Fig. 1;

Fig. 5 is an exploded view of the combination of Fig. 1, illustrating the cover assembly in its open configuration before being mounted on to the propane tank;

Fig. 6 is a front perspective view of an integrated propane tank and cover assembly in accordance with the invention, the cover assembly presenting the likeness of a football helmet;

Fig. 7 is an elevational view of the assembly of Fig. 6;

Fig. 8 is a rear perspective view of the assembly of Fig. 6;

Fig. 9 is a plan view of the assembly of Fig. 6;

Fig. 10 is front perspective view of a combination comprising a standard household propane tank with a unitary, one-piece cover assembly in accordance with the invention releasably mounted on the tank, the cover assembly presenting the likeness of a racing helmet;

Fig. 11 is an elevational view of the combination illustrated in Fig. 10;

Fig. 12 is a partial sectional view of the combination illustrated in Fig. 10;

Fig. 13 is a vertical sectional view of the one-piece cover assembly separate from the tank;

Fig. 14 is a front perspective view of the combination comprising a standard household propane tank with a hollow molded cover assembly in accordance with the invention mounted on the tank, with the cover assembly presenting the likeness of a football helmet;

Fig. 15 is an elevational view of the combination illustrated in Fig. 14;

Fig. 16 is partial sectional view of the combination of Fig. 14;

Fig. 17 is a vertical sectional view of the hollow molded cover assembly of Fig. 14, shown separate from the tank; and

Fig. 18 is a perspective view of a combination comprising a standard household propane tank with a cover assembly in accordance with the invention mounted on the tank, the cover assembly presenting the likeness of a basketball.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Turning now to Figs. 1-5, a combination 30 is illustrated including a standard household propane tank 32 and a detachable, two-piece cover assembly 34. The tank 32 (see Fig. 4) includes an upright hollow propane-holding container 36 having a circular base 38 and rounded upper and lower shouldered walls 40, 42. A standard propane tank valve 44 is secured at the top of the tank and extends above the wall 40, with a carrying and connection cage 46 disposed partially about the valve 44. It will be appreciated that the tank 32 is itself wholly conventional.

5

　　　The cover assembly 34 in this embodiment is made up of a rigid body preferably formed of an appropriate synthetic resin material and having front and rear sections 48 and 50 which are hingedly interconnected by means of hinge structure 52. The edges of the sections 48 and 50 opposite hinge structure 52 are provided with mating latch structures 54 and 56. As best seen in Fig. 5, the inner surface 58 of the cover assembly 34 is made up of front and rear section inner surfaces 60 and 62. These surfaces are designed to substantially surround the tank 32 and are further provided with a number of inwardly extending engagement blocks 64. As illustrated in Fig. 4, the blocks 64 are designed to firmly engage the wall of container 36 so as to prevent inadvertent axial or rotational movement of the cover assembly 34 relative to tank 32. It will further be observed that the cover assembly sections 48 and 50 cooperatively present an upper margin defining upper opening 66, which is disposed about cage 46 and valve 44, and a lower margin defining lower opening 68, which extends about the lower portion of tank 32.

　　　In this embodiment, the outer surface 70 of the assembly 34, made up of substantially rigid front and rear walls 72 and 74, gives the three-dimensional likeness and appearance of an automobile racing helmet. Thus, the front wall 72 has a simulated visor 76 presenting concavo-convex surfaces, as well as a downwardly and outwardly extending chin section 78. In use, the cover assembly 34 is opened as depicted in Fig. 5, and closed about the tank 32 so that the latch structures 54 and 56 mate and engage. Removal of the cover assembly is accomplished by opening the latch structures and swinging the cover sections 48 and 50 apart.

　　　Figures 6-9 illustrate another embodiment in the form of a combination 80 made up of an integrated propane tank 82 and cover assembly 84. In this case, the assembly 84 has a body presenting a rigid wall defining outer surface 86, giving the three-dimensional appearance or likeness of a football helmet. The latter has a rounded surface characteristic of football helmets, along with simulated ear holes 88 and an outwardly projecting mask 90. The combination 80 further includes an upper valve 44 and cage 46, as previously described. Internally, the combination 80 may have a standard household propane tank, as described above, with the cover assembly 84 welded or otherwise permanently secured to the tank.

　　　Figures 10-13 illustrate another form of the invention made of a combination 92 having a standard propane tank 32, described previously, and a molded, one-piece, substantially rigid, synthetic resin cover assembly 94. As best seen in Figs. 12 and 13, the cover assembly 94 has a body presenting upper margin defining an upper opening 96 designed to surround and remain below cage 46 and valve 44, and a lower margin defining lower opening 98. The inner surface 100 of the assembly 94 is configured to closely mate with the outer wall of container 36 and

10

15

20

25

30

6

shoulder 40. The assembly 94 may thus be installed on tank 32 simply by positioning the lower opening 98 above the tank and sliding the cover assembly 94 onto the tank to assume the position shown in Fig. 12. The cover can of course also be readily removed from the tank 32 by reversing this procedure. The cover assembly 94 can be fabricated from any suitable synthetic resin material, such as compressible polyurethane 102. The outer skin or surface 104 thereof is configured to give the three-dimensional likeness or appearance of an automotive racing helmet, as in the case of the first embodiment.

Figures 14-16 depict another embodiment, in the form of combination 106 again comprising a standard propane tank 32 and a cover assembly 108. The latter is in the form of a body having an inner wall 110, an outer wall 112, an upper margin defining upper opening 114, and a lower margin defining lower opening 116. Thus, the cover assembly 108 is a unitary, substantially rigid structure, similar to the cover assembly 94. The inner wall 110 is designed to closely mate with the outer surfaces of tank 32, whereas the outer wall 112 gives the three-dimensional likeness or appearance of a football helmet, including simulated ear holes 118 and an outwardly projecting face mask 120. In this instance, however, the cover assembly 108 is a substantially rigid, hollow body presenting air space 122 between the inner and outer walls 110 and 112, and can be conveniently produced by standard rotary molding or other conventional techniques. The use of assembly 108 is the same as that described with respect to unitary cover assembly 94, i.e., the cover 108 can be positioned above a tank 32 and slid into place, as shown in Fig. 16.

Figure 18 illustrates a combination 142 comprising a standard propane tank 32 and a cover assembly 144. The assembly 144 has a substantially rigid body of unitary, one-piece construction as in earlier embodiments. Thus, the cover assembly 144 includes an inner surface (not shown) configured to mate with the outer surface of tank 32 and has upper and lower margins respectively defining openings 146, 148 allowing the assembly to be positioned over the tank 32. In this instance, the outer surface 150 of the assembly 144 presents the three-dimensional appearance of a basketball having simulations of typical sections and intervening seams. The cover assembly 144 may be hollow or filled.

It will thus be appreciated that the present invention provides a wide array of sports-related propane tank covers and combinations, which may be sectionalized, as illustrated in Figs. 1-5, or unitary, as depicted in Figs. 6-18. Alternately, combined assemblies can be made wherein the tank and cover assembly are unitized, as illustrated in Figs. 6-9.

7

Furthermore, while the invention has been illustrated in the context of standard household propane tanks, the principles of the invention can be equally applied to larger or differently-configured propane tanks.  Thus, the term "propane tank" as used herein should be understood to embrace all shapes and sizes of propane tanks.  Additionally, the cover assemblies may be
5   separate from or used with any size or shape of propane tank, or a propane tank may be fabricated from two or more sections by welding the sections together, wherein at least some of the sections have preformed surface design features in accordance with the invention, so that the completed tank has the likeness or appearance of a sports-related item.  It will be appreciated that this form of the invention does not make use of a pre-existing or pre-formed propane tank.

10  As noted previously, the cover assemblies of the invention are characterized by substantially rigid outer walls configured to closely resemble a sports-related item.  In many preferred forms, the entireties of the assemblies are of substantially rigid design.

8

We Claim:

1.      A sports-related cover assembly for a propane tank, said tank including an upper wall and a valve extending upwardly from the upper wall, said cover assembly comprising a decorative body having wall structure configured to be placed about a propane tank and presenting an upper and a lower margin, said wall structure including a substantially rigid outer wall shaped and configured to present a three-dimensional likeness of a sports-related item, said valve extending above said cover assembly upper margin.

2.      The cover assembly of claim 1, said decorative body being separable from said propane tank.

3.      The cover assembly of claim 2, said body having a pair of sections, said sections being hinged together, there being latching structure releasably interconnecting said sections when applied to a propane tank.

4.      The cover assembly of claim 2, said body having an upper and a lower opening, said lower opening sized to receive a propane tank, said upper opening being smaller than said lower opening and sized to surround the valve and connection assembly of a propane tank.

5.      The cover assembly of claim 2, said body formed of molded synthetic resin material.

6.      The cover assembly of claim 1, the entirety of said body being substantially rigid.

7.      The cover assembly of claim 1, said body being integrated with said propane tank.

8.      The cover assembly of claim 1, said sports-related item selected from the group consisting of athletic headgear, athletic footwear, athletic balls, and other athletic equipment.

9.      The cover assembly of claim 8, said sports-related item being athletic headgear and selected from the group consisting of helmets, caps, and hats.

9

10.     The cover assembly of claim 9, said headgear selected from the group consisting of helmets for racing, football, lacrosse, baseball batting, rodeo, fencing, skiing and other winter sports, bicycling, hockey, and boxing.

5       11.     The cover assembly of claim 8, said sports-related item being athletic footwear and selected from the group consisting of footwear for soccer, football, hockey, basketball, track, skiing, boxing, golf, ballet, and bicycling.

        12.     The cover assembly of claim 8, said sports-related item being an athletic ball and
10      selected from the group consisting of baseballs, basketballs, cricket balls, tennis balls, footballs, rugby balls, lacrosse balls, baoding balls, billiard balls, table tennis balls, bowling balls, handballs, soccer balls, wiffle balls, polo balls, golf balls, racquet balls, beach balls, and volley balls.

15      13.     The cover assembly of claim 8, said sports-related item being other athletic equipment and selected from the group consisting of athletic apparel selected from the group consisting of jerseys, shirts, jackets, shorts, pants, stockings, pads, and gloves, hockey pucks, curling stones, racquets, mallets, baseball bats, hockey sticks, and basketball nets.

20      14.     The cover assembly of claim 1, said body outer surface having a portion thereof spaced at least one-half inch from the proximal propane tank, when the cover assembly is mounted on a propane tank.

15.     A propane tank assembly comprising wall structure designed to contain propane and presenting an upper wall, there being an outer wall below said upper wall, a valve extending upwardly from said upper wall and above said outer wall, said outer wall below said valve being substantially rigid and shaped and configured to present a three-dimensional likeness of a sports-related item.

16.     The assembly of claim 15, said outer wall forming a part of a cover assembly separate from a propane tank, said cover assembly comprising a decorative body having body wall structure configured to be placed about a propane tank and presenting an upper and a lower margin, said body wall structure including a substantially rigid outer wall shaped and configured to present a three-dimensional likeness of a sports-related item, said valve extending above said cover assembly upper margin.

17.     The assembly of claim 16, said decorative body being separable from said propane tank or integrated with said propane tank.

18.     The assembly of claim 16, the entirety of said body being substantially rigid.

19.     The assembly of claim 15, said sports-related item selected from the group consisting of athletic headgear, athletic footwear, athletic balls, and other athletic equipment.

20.     The assembly of claim 19, said sports-related item being athletic headgear selected from the group consisting of helmets, caps, and hats, said helmets selected from the group consisting of helmets for racing, football, lacrosse, baseball batting, rodeo, fencing, skiing and other winter sports, bicycling, hockey, and boxing, said sports-related item being athletic footwear selected from the group consisting of footwear for soccer, football, hockey, basketball, track, skiing, boxing, golf, ballet, and bicycling, said sports-related item being an athletic ball and selected from the group consisting of baseballs, basketballs, cricket balls, tennis balls, footballs, rugby balls, lacrosse balls, baoding balls, billiard balls, table tennis balls, bowling balls, handballs, soccer balls, wiffle balls, polo balls, golf balls, racquet balls, beach balls, and volley balls, said sports-related item being other athletic equipment and selected from the group consisting of athletic apparel selected from the group consisting of jerseys, shirts, jackets, shorts,

pants, stockings, pads, and gloves, hockey pucks, curling stones, racquets, mallets, baseball bats, hockey sticks, and basketball nets.

12

## ABSTRACT

Three-dimensional, sports-related cover assemblies (34, 84, 94, 108, 126, 144) for propane tanks (32) are provided in order to permit sport- or team-related decoration of the tanks (32). The cover assemblies (34, 84, 94, 108, 126, 144) may be separable from the tanks (32) or may be integrated and unitized with the tanks (32). The assemblies (34, 84, 94, 108, 126, 144) have substantially rigid, contoured or concavo-convex outer walls presenting surfaces (70, 86, 104, 112, 130, 150), which are configured to give the three-dimensional likeness or appearance of a sports-related item, such as athletic head gear, footwear, balls, or other equipment.

5

CASE PARTICIPANTS ONLY



FIG.1.

FIG.2.

CASE-PARTICIPANTS ONLY



*FIG.3.*

*FIG.4.*



FIG.5.



FIG. 7.

FIG. 6.

4/10

Case: 14-1157 CASE PARTICIPANTS ONLY Document: 56 Page: 56 Filed: 02/07/2014



*FIG. 9.*



*FIG. 8.*

A32



FIG.10

FIG.11.

7/10



CASE PARTICIPANTS ONLY

A34



*FIG.14.*

*FIG.15.*

8/10

CASE-PARTICIPANTS ONLY



FIG.16.

FIG.17.

A35

9/10



*FIG.18.*

## VIII. Claims Appendix

The claims on appeal are as follows:

1.      A sports-related cover assembly for a propane tank, said tank including an upper wall and a valve extending upwardly from the upper wall, said cover assembly comprising a decorative body having wall structure configured to be placed about a propane tank and presenting an upper and a lower margin, said wall structure including a substantially rigid outer wall shaped and configured to present a three-dimensional likeness of a sports-related item, said valve extending above said cover assembly upper margin, said decorative body formed of metal, permanently secured to said tank, presenting a concavo-convex wall segment, and having a portion thereof spaced at least one-half inch from the tank.

6.      The cover assembly of claim 1, the entirety of said body being substantially rigid.

7.      The cover assembly of claim 1, said body being integrated with said propane tank.

8.      The cover assembly of claim 1, said sports-related item selected from the group consisting of athletic headgear, athletic footwear, athletic balls, and other athletic equipment.

9.      The cover assembly of claim 8, said sports-related item being athletic headgear and selected from the group consisting of helmets, caps, and hats.

15.    A propane tank assembly comprising <u>metal</u> wall structure designed to contain propane and presenting an upper metal wall, there being an outer metal wall below said upper wall, a valve extending upwardly from said upper wall and above said outer wall, said outer wall below said valve being permanently secured to said upper wall, substantially rigid and shaped and configured to present a three-dimensional likeness of a sports-related item, said wall structure having a concavo-convex wall segment.

17.    The assembly of claim 15, said outer wall being integrated with said wall structure.

18.    The assembly of claim 15, the entirety of said outer wall being substantially rigid.

19.    The assembly of claim 15, said sports-related item selected from the group consisting of athletic headgear, athletic footwear, athletic balls, and other athletic equipment.

20.    The assembly of claim 19, said sports-related item being athletic headgear selected from the group consisting of helmets, caps, and hats, said helmets selected from the group consisting of helmets for racing, football, lacrosse, baseball batting, rodeo, fencing, skiing and other winter sports, bicycling, hockey, and boxing, said sports-related item being athletic footwear selected from the group consisting of footwear for soccer, football, hockey, basketball, track, skiing, boxing, golf, ballet, and bicycling, said sports-related item being an athletic ball and selected from the group consisting of baseballs, basketballs, cricket balls, tennis balls, footballs, rugby balls, lacrosse balls, baoding balls, billiard balls, table tennis balls, bowling balls, handballs, soccer balls, wiffle balls, polo balls, golf balls, racquet balls, beach balls, and volley balls, said sports-related item being other athletic equipment and selected from the group consisting of athletic apparel selected from the group consisting of jerseys, shirts, jackets, shorts, pants, stockings, pads, and gloves, hockey pucks, curling stones, racquets, mallets, baseball bats, hockey sticks, and basketball nets.

21.     The assembly of claim 15, said wall structure defining said propane tank, without making use of a pre-existing propane tank.

Form 30

FORM 30. Certificate of Service

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on | February 7, 2014 |
by:

- ☐ US mail
- ☐ Fax
- ☐ Hand
- ☒ Electronic Means
    (by email or CM/ECF)

| John M. Collins | | /s/ John M. Collins |
| Name of Counsel | | Signature of Counsel |

Law Firm | Hovey Williams LLP |

Address | 10801 Mastin Blvd., Suite 1000 |

City, State, ZIP | Overland Park, KS 66210 |

Telephone Number | 913-647-9050 |

FAX Number | 913-647-9057 |

E-mail Address | jcollins@hoveywilliams.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS,

TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

     1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

    <u>X</u>    The brief contains  <u>3,899</u>  words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

    __    The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

     2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

    <u>X</u>    The brief has been prepared in a proportionally spaced typeface using  <u>WordPerfect X3</u>  in  <u>14 point Times New Roman font</u>, or

    __    The brief has been prepared in a monospaced typeface using _____ with _____.

Date:  February 7, 2014

                     <u>/s/ John M. Collins</u>

                     John M. Collins

                     HOVEY WILLIAMS LLP

                     ATTORNEYS FOR APPELLANTS